**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

        v.

UTICA RESOURCE OPERATING, LLC,

      Defendant.

Civil Action No. 22-3906

**COMPLAINT**

Plaintiff, the United States of America, by the authority of the Attorney General and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

**NATURE OF ACTION**

1.    This is a civil action for injunctive relief and civil penalties for violations of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401 *et seq.*, at 11 oil and natural gas production well pads that are owned and/or operated by Defendant Utica Resource Operating, LLC ("URO") in the state of Ohio.

2.    This action addresses CAA violations at particular URO facilities located in Guernsey, Morgan, and Washington Counties in Ohio, including the facilities known as: Cole, Commissioners-Onega, Detweiler, Dynamite, Garvin, Mason, Miley, Neill, Neff, Palmer, and Stiers (collectively referred to herein as the "Subject Facilities").

3.    The Subject Facilities are oil and gas production well pads designed to receive and separate natural gas, oil (often called "condensate"), and oily water (often called "produced water") from nearby oil and gas production wells owned and/or operated by URO. After

separation, the natural gas is transported from the well pad by a pipeline. The condensate and produced water accumulate at the well pad in large tanks (often called "storage vessels") until those liquids are removed and transported from the well pad by tank trucks.

4. This action targets URO's violations of CAA requirements that require URO to limit its emissions of volatile organic compounds ("VOC") from storage vessels and associated equipment at the Subject Facilities.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1395 and Section 113(b) of the CAA, 42 U.S.C. § 7413(b), because the violations that constitute the basis for this Complaint occurred in this District and the Subject Facilities are operated in this District.

## NOTICE

7. The United States has provided notice of the commencement of this action to the State of Ohio as required by Section 113(b) of the CAA, 42 U.S.C. § 7413(b). Pursuant to Section 113(a) of the CAA, 42 U.S.C. § 7413(a), EPA has notified URO and the State of Ohio of the violations of the Ohio State Implementation Plan alleged in this Complaint – including alleged violations of permits issued under the Ohio SIP – more than 30 days prior to the filing of this Complaint.

## THE DEFENDANT

8. URO is incorporated in the State of Delaware and does business in the State of Ohio.

9. URO maintains a corporate headquarters located at 2167-C State Route 821, Marietta, Ohio.

2

10. URO is a "person" within the meaning of Sections 113(b) and 302(e) of the CAA, 42 U.S.C. §§ 7413(b) and 7602(e).

11. URO owns and/or operates each of the Subject Facilities.

## STATUTORY/REGULATORY BACKGROUND AND GENERAL ALLEGATIONS

### The Clean Air Act

12. Congress enacted the CAA "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

13. This action involves three parts of the regulatory scheme established by the CAA and Ohio's air pollution control laws: (i) EPA New Source Performance Standards that apply to certain oil and natural gas production facilities owned and/or operated by URO; (ii) permits issued under Ohio's CAA SIP for certain oil and natural gas production facilities owned and/or operated by URO; and (iii) the enforcement mechanisms of the CAA.

### New Source Performance Standards and NSPS Subpart OOOO

14. Section 111 of the CAA, 42 U.S.C. § 7411, requires EPA to implement a New Source Performance Standards ("NSPS") program for the control of air pollutant emissions. NSPS regulations impose nationally uniform emission standards for new or modified stationary sources falling within industrial categories that significantly contribute to air pollution.

15. In 2012, EPA promulgated NSPS regulations for the crude oil and natural gas production, transmission, and distribution industry sector, which were codified at 40 C.F.R. Part 60, Subpart OOOO ("Subpart OOOO"). 77 Fed Reg. 49,542 (Aug. 16, 2012). EPA reconsidered and revised certain provisions of Subpart OOOO in 2013. 78 Fed Reg. 58,416 (Sept. 23, 2013).

16. Subpart OOOO establishes emission standards for the control of VOCs and sulfur dioxide emissions from various types of oil and natural gas production, processing, transmission, storage, and distribution equipment constructed, modified, or reconstructed after August 23, 2011, and on or before September 18, 2015, including storage vessels.

17. Subpart OOOO defines "storage vessel" as "a tank or other vessel that contains an accumulation of crude oil, condensate, intermediate hydrocarbon liquids, or produced water, and that is constructed primarily of nonearthen materials (such as wood, concrete, steel, fiberglass, or plastic) which provide structural support." 40 C.F.R. § 60.5430.

18. A storage vessel is an affected facility subject to Subpart OOOO requirements if a properly performed emission determination indicates that the storage vessel has the potential for VOC emissions equal to or greater than six tons per year. 40 C.F.R. § 60.5365(e).

19. The potential for VOC emissions from a storage vessel must be calculated using a generally accepted model or calculation methodology, based on the maximum average daily throughput determined for a 30-day period of production prior to the applicable emission determination deadline specified in 40 C.F.R. § 60.5365. *Id.* The determination may take into account requirements under a legally and practically enforceable limit in an operating permit or other requirement established under a federal, state, local or tribal authority. *Id.* A storage vessel meeting these criteria is defined as a "storage vessel affected facility." *Id.*

20. Among other things, Subpart OOOO provides that owners and operators of one or more storage vessel affected facilities constructed, modified or reconstructed after August 23, 2011, and on or before September 18, 2015, are subject to the applicable provisions of Subpart OOOO. 40 C.F.R. § 60.5365.

21. Subpart OOOO requires the owner/operator of a storage vessel affected facility to comply with certain emission control requirements.

4

a.      The owner/operator of a storage vessel affected facility must either:

(i) reduce VOC emissions from the storage vessel by 95.0 percent; or (ii) maintain the

uncontrolled actual VOC emissions from the storage vessel at less than four tons per year

without considering control.  40 C.F.R. § 60.5395(d)(1)-(2).

b.      For a storage vessel subject to the 95.0 percent emission reduction

requirement, the required emission reduction must be achieved by control requirements

that include equipping the storage vessel with a cover that meets the requirements of

40 C.F.R. § 60.5411(b), connecting the storage vessel to a closed vent system that meets

the requirements of 40 C.F.R. § 60.5411(c), and either: (i) routing the storage vessel

vapors to a control device (such as an enclosed combustor) that meets certain

requirements; or (ii) routing the storage vessel vapors to a process.  40 C.F.R.

§ 60.5395(e).

22.     The cover requirements specified in 40 C.F.R. § 60.5411(b) provide as follows.

a.      40 C.F.R. § 60.5411(b)(1) requires that:

The cover and all openings on the cover (e.g., access hatches, sampling
ports, pressure relief valves and gauge wells) shall form a continuous
impermeable barrier over the entire surface area of the liquid in the storage
vessel or wet seal fluid degassing system.

b.      40 C.F.R. § 60.5411(b)(2) requires that:

Each cover opening shall be secured in a closed, sealed position (e.g.,
covered by a gasketed lid or cap) whenever material is in the unit on
which the cover is installed except during those times when it is necessary
to use an opening as follows:

(i) To add material to, or remove material from the unit (this includes
openings necessary to equalize or balance the internal pressure of the
unit following changes in the level of the material in the unit);

(ii) To inspect or sample the material in the unit;

(iii) To inspect, maintain, repair, or replace equipment located inside the unit; or

(iv) To vent liquids, gases, or fumes from the unit through a closed-vent system designed and operated in accordance with the requirements of paragraph (a) or (c) of this section to a control device or to a process.

23. The closed vent system requirements specified in 40 C.F.R. § 60.5411(c) provide as follows.

a. 40 C.F.R. § 60.5411(c)(1) requires that:

You must design the closed vent system to route all gases, vapors, and fumes emitted from the material in the storage vessel to a control device that meets the requirements specified in § 60.5412(c) and (d), or to a process.

b. 40 C.F.R. § 60.5411(c)(2) requires that:

You must design and operate a closed vent system with no detectable emissions, as determined using olfactory, visual and auditory inspections. Each closed vent system that routes emissions to a process must be operational 95 percent of the year or greater.

24. Subpart OOOO requires the owner/operator of a storage vessel affected facility to comply with certain initial compliance demonstration requirements, as well as initial notification and annual reporting requirements.

a. The owner/operator of a storage vessel affected facility must make a formal determination of its initial compliance with the standards applicable to the storage vessel. 40 C.F.R. § 60.5410.

b. The owner/operator of a storage vessel affected facility must retain records documenting initial compliance with the standards applicable to the storage vessel. 40 C.F.R. § 60.5410(h)(5).

c. The owner/operator of a storage vessel affected facility must submit annual reports containing specified information. 40 C.F.R. § 60.5420.

   d. Among other things, each annual report must include: (i) an identification of each storage vessel affected facility for which construction, modification, or reconstruction commenced during the reporting period; and (ii) a statement that initial compliance with the applicable VOC emission reduction and control requirements has been achieved for the relevant storage vessel(s). 40 C.F.R. § 60.5420(b)(6)(i), (v).

25. Subpart OOOO requires the owner/operator of a storage vessel affected facility to comply with additional monitoring and recordkeeping requirements.

   a. If vapors from a storage vessel affected facility are routed to a control device or a process, Subpart OOOO requires monthly olfactory, visual, and auditory inspections to identify defects in the storage vessel cover and closed vent system that could result in air emissions. 40 C.F.R. § 60.5416(c)(1)-(2).

   b. Subpart OOOO also requires that the owner/operator maintain records of the results of these inspections. 40 C.F.R. §§ 60.5416(c)(1)-(2), 60.5420(c)(6)-(7).

26. For a storage vessel not subject to a legally and practically enforceable limit on its potential for VOC emissions, the Subpart OOOO emission determination may exclude vapor from the storage vessel that is recovered and routed to a process through a vapor recovery unit designed and operated as specified in Subpart OOOO provided that: (i) the storage vessel meets the cover requirements specified in 40 C.F.R. § 60.5411(b); (ii) the storage vessel meets the closed vent system requirements specified in 40 C.F.R. § 60.5411(c); and (iii) the owner or operator of the storage vessel maintains records that document compliance with the cover requirements specified in 40 C.F.R. § 60.5411(b) and the closed vent system requirements specified in 40 C.F.R. § 60.5411(c) and (d) for the storage vessel. 40 C.F.R. § 60.5365(e)(3).

27. If the original emission determination for a storage vessel excluded storage vessel vapor that would be recovered and routed to a process through a vapor recovery unit, the owner

or operator must make a new emission determination calculating the storage vessel's potential for VOC emissions within 30 days if: (i) the storage vessel is operated without meeting the cover requirements specified in 40 C.F.R. § 60.5411(b); (ii) the storage vessel is operated without meeting the closed vent system requirements specified in 40 C.F.R. § 60.5411(c); or (iii) the vapor recovery unit is removed. *See* 40 C.F.R. § 60.5365 (e)(3)(iv).

28.　　Subpart OOOO requires owners and operators of storage vessel affected facilities to demonstrate initial compliance with Subpart OOOO for each storage vessel. 40 C.F.R. § 60.5410(h). In order to demonstrate initial compliance with Subpart OOOO, owners and operators must have completed five compliance requirements found elsewhere in Subpart OOOO: determining the potential VOC emission rate (40 C.F.R. § 60.5365(e)); reducing VOC emissions (40 C.F.R. § 60.5395(d)); meeting certain cover, closed vent and control device requirements, as applicable (40 C.F.R. § 60.5395(e), 40 C.F.R. § 60.5411(b) and (c)); meeting reporting requirements, including an initial annual report due no later than 90 days after the initial compliance period (40 C.F.R. § 60.5420(b)); and maintaining appropriate records (40 C.F.R. § 60.5420(c)). *Id.*

29.　　Subpart OOOO requires that at all times, including periods of startup, shutdown, and malfunction, owners and operators shall maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions. 40 C.F.R. § 60.5370(b).

**New Source Performance Standards and NSPS Subpart OOOOa**

30.　　In addition to regulations covering facilities constructed on or before September 18, 2015, the NSPS also includes Standards of Performance for New Stationary Sources for Crude Oil and Natural Gas Facilities for which Construction, Modification or

Reconstruction Commenced After September 18, 2015, found in 40 C.F.R. Part 60, Subpart OOOOa ("Subpart OOOOa").

31.     Subpart OOOOa establishes emission standards for the control of emissions such as VOCs from various types of equipment at oil and natural gas facilities constructed, modified, or reconstructed after September 18, 2015, including storage vessels.

32.     Subpart OOOOa, at 40 C.F.R. § 60.5365a(e), provides that a storage vessel is an affected facility subject to Subpart OOOOa requirements if a properly performed emission determination indicates that the storage vessel has the potential for VOC emissions equal to or greater than six tons per year. The potential for VOC emissions must be calculated using a generally accepted model or calculation methodology, based on the maximum average daily throughput determined for a 30-day period of production prior to August 2, 2016, or within 60 days after startup (whichever was later). The determination may take into account requirements under a legally and practically enforceable limit in an operating permit or other requirement established under a federal, state, local or tribal authority.

33.     Subpart OOOOa requires the owner/operator of a storage vessel affected facility to comply with certain emission control requirements:

   a. The owner/operator of a storage vessel affected facility must either: (i) reduce VOC emissions from the storage vessel by 95.0 percent within 60 days after startup; or (ii) maintain the uncontrolled actual VOC emissions from the storage vessel at less than four tons per year without considering control. *See* 40 C.F.R. § 60.5395a(a)(2)-(3).

   b. For a storage vessel subject to the 95.0 percent emission reduction requirement, the required emission reduction must be achieved by control requirements that include equipping the storage vessel with a cover that meets the requirements of

40 C.F.R. § 60.5411a(b), connecting the storage vessel to a closed vent system that meets the requirements of 40 C.F.R. § 60.5411a(c) and (d), and either: (i) routing the storage vessel vapors to a control device (such as an enclosed combustor) that meets certain requirements specified in 40 C.F.R. § 60.5412a(c) or (d); or (ii) routing the storage vessel vapors to a process. 40 C.F.R. § 60.5395a(b).

34. Subpart OOOOa, at 40 C.F.R. § 60.5411a(b), requires owners and operators of storage vessel affected facilities to ensure that covers on storage vessels meet certain requirements, including that the cover and all openings on the cover shall form a continuous impermeable barrier over the entire surface area of the liquid in the storage vessel; each cover opening shall be secured in a closed, sealed position except when certain activities are ongoing; and that each storage vessel thief hatch shall be equipped, maintained, and operated with a weighted mechanism or equivalent, to ensure the lid remains properly seated and sealed under normal operating conditions, including such times when working, standing/breathing, and flash emissions may be generated.

35. Subpart OOOOa, at 40 C.F.R. § 60.5411a(c), requires owners and operators of storage vessel affected facilities using a control device to control emissions or routing emissions to a process to design closed vent systems to route all gases, vapors, and fumes emitted from the material in the storage vessel to a control device that meets the requirements of 40 C.F.R. § 60.5412a(c) and (d); and to design and operate a closed vent system with no detectable emissions, as determined using olfactory, visual, and auditory inspections.

36. Subpart OOOOa, at 40 C.F.R. § 60.5412a(d), requires that each control device used to meet the emission reduction standard in 40 C.F.R. § 60.5395a(a)(2) for storage vessel affected facilities must be installed according to 40 C.F.R. § 60.5412a(d)(1) through (4), as

applicable. As an alternative to 40 C.F.R. § 60.5412a(d)(1), owners/operators of storage vessel affected facilities may install a control device model tested under 40 C.F.R. § 60.5413a(d), which meets the criteria in 40 C.F.R. § 60.5413a(d)(11) and meets the continuous compliance requirements in 40 C.F.R. § 60.5413a(e).

37. Subpart OOOOa, at 40 C.F.R. § 60.5412a(d)(1)(ii), requires that, for each enclosed combustion device, owners/operators must install and operate a continuous burning pilot flame.

38. Subpart OOOOa, at 40 C.F.R. § 60.5413a(e), requires that owners/operators of combustion control devices tested by the manufacturer demonstrate that the control device achieves the performance requirements in 40 C.F.R. § 60.5413a(d)(11) by installing a device tested under 40 C.F.R. § 60.5413a(d) and complying with the criteria specified in 40 C.F.R. § 60.5413a(e)(1) through (8).

39. Subpart OOOOa, at 40 C.F.R. § 60.5413a(e)(2), requires that a pilot flame on the combustion control device must be present at all times of operation.

40. For a storage vessel not subject to a legally and practically enforceable limit on its potential for VOC emissions, the Subpart OOOOa emission determination may exclude vapor from the storage vessel that is recovered and routed to a process through a vapor recovery unit designed and operated as specified in Subpart OOOOa provided that: (i) the storage vessel meets the cover requirements specified in 40 C.F.R. § 60.5411a(b); (ii) the storage vessel meets the closed vent system requirements specified in 40 C.F.R. § 60.5411a(c) and (d); and (iii) the owner or operator of the storage vessel maintains records that document compliance with the cover requirements specified in 40 C.F.R. § 60.5411a(b) and the closed vent system requirements specified in 40 C.F.R. § 60.5411a(c) and (d) for the storage vessel. *See* 40 C.F.R. § 60.5365a(e)(3).

41.     If the original emission determination for a storage vessel excluded storage vessel vapor that would be recovered and routed to a process through a vapor recovery unit, the owner or operator must make a new emission determination calculating the storage vessel's potential for VOC emissions within 30 days if: (i) the storage vessel is operated without meeting the cover requirements specified in 40 C.F.R. § 60.5411a(b); (ii) the storage vessel is operated without meeting the closed vent system requirements specified in 40 C.F.R. § 60.5411a(c) and (d); or (iii) the vapor recovery unit is removed. *See* 40 C.F.R. § 60.5365a(e)(3)(iv).

42.     Subpart OOOOa, at 40 C.F.R. § 60.5410a(h), requires owners and operators of storage vessel affected facilities to demonstrate initial compliance with Subpart OOOOa for each storage vessel. In order to demonstrate initial compliance with Subpart OOOOa, owners and operators must have completed six compliance requirements found elsewhere in Subpart OOOOa: determining the potential VOC emission rate (40 C.F.R. § 60.5365a(e)); reducing VOC emissions (40 C.F.R. § 60.5395a(a)); meeting certain cover, closed vent, and control device requirements, as applicable (40 C.F.R. § 60.5411a(b)-(d)); conducting initial performance tests as required (40 C.F.R. § 60.5413a) and complying with continuous compliance requirements (40 C.F.R. § 60.5415a(e)); meeting reporting requirements, including an initial annual report due no later than 90 days after the initial compliance period (40 C.F.R. § 60.5420a(b)); and maintaining appropriate records (40 C.F.R. § 60.5420a(c)).

43.     Subpart OOOOa, at 40 C.F.R. § 60.5370a(b), requires that at all times, including periods of startup, shutdown, and malfunction, owners and operators shall maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions.

### The Ohio State Implementation Plan and Ohio General Permits for
### Oil and Gas Well-Site Production Operations

The Ohio SIP

44.     Section 110 of the CAA, 42 U.S.C. § 7410, requires each state to adopt, and

submit to EPA for approval, a State Implementation Plan ("SIP") that provides for the

implementation, maintenance, and enforcement of national ambient air quality standards for

particular pollutants, including ground-level ozone. VOC are a principal component of

atmospheric reactions that form ground-level ozone, so EPA-approved SIPs and permits issued

in accordance with EPA-approved SIPs routinely regulate emissions of VOC as an ozone

precursor.

45.     Under Section 110(a)(2) of the CAA, 42 U.S.C. § 7410(a)(2), each SIP must

include enforceable emission limitations and other control measures, means, or techniques, as

well as schedules for compliance, as may be necessary to meet applicable requirements, and

must include a permit program to provide for the enforcement of these limitations, measures, and

schedules as necessary to assure the NAAQS are achieved. Upon EPA's approval of a SIP, the

plans become independently enforceable by the federal government, as stated under

Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1).

46.     EPA has approved various provisions of the Ohio Administrative Code ("Ohio

Admin. Code") as part of the Ohio SIP, including Ohio Admin. Code § 3745-31-29. 78 Fed.

Reg. 11,748 (Feb. 20, 2013); 80 Fed. Reg. 36,477 (June 25, 2015); 40 C.F.R. § 52.1870(c).

47.     The Ohio SIP, at Ohio Admin. Code § 3745-31-29, allows the Director of the

Ohio Environmental Protection Agency ("Ohio EPA") to develop model general permits to

install and model general permits to operate for certain categories of air emissions sources.

48.     The Ohio SIP, at Ohio Admin. Code § 3745-31-02, establishes requirements for installation, modification and operation of new and existing air contaminant sources via a program for sources to obtain a Permit-to-Install ("PTI") or a Permit-to-Install-and-Operate ("PTIO").

The GP 12.1 and 12.2 Permit Program for Oil and Gas Well-Site Production Operations

49.     On January 31, 2012, Ohio EPA finalized a model general permit PTIO for oil and gas well production operations, called GP PTIO 12. In April 2014, Ohio EPA revised that model permit to incorporate Subpart OOOO requirements and to create two different versions of the model permit for facilities that meet different qualifying criteria. Revised GP PTIO 12.1 was designed for oil and gas well-site production operations where the flare is limited to a nominal 10 million British Thermal Units per hour (mmBtu/hr) and the natural gas engines are limited to 1,800 total horsepower. GP PTIO 12.2 was designed for oil and gas well-site production operations where the flare is limited to a nominal 32 mmBtu/hr and the natural gas engines are limited to 1,000 total horsepower.

50.     GP PTIO 12.1 and GP PTIO 12.2 expressly incorporate relevant requirements of Subpart OOOO, including: (i) the directive that storage vessel affected facilities must meet the cover and closed vent system requirements of Subpart OOOO; (ii) the requirement to conduct monthly inspections – and maintain inspection records – for each cover and each closed vent system used to demonstrate compliance in accordance with Subpart OOOO; and (iii) the requirement to maintain records of compliance with Subpart OOOO cover and closed vent system requirements. GP PTIO 12.1 and 12.2 specify that these incorporated requirements of Subpart OOOO are federally-enforceable requirements of any such permit issued by Ohio EPA.

51.     GP PTIO 12.1 and GP PTIO 12.2 supplement, but do not supplant, the requirements of Subpart OOOO for storage vessels at oil and gas well production facilities.

52.     The GP PTIO 12.1 and GP PTIO 12.2 Permits, at Condition A. 1, state:

>    This permit allows you to install and operate the emissions unit(s) identified in this PTIO. You must install and operate the unit(s) in accordance with the application you submitted and all the terms and conditions contained in this PTIO, including emission limits and those terms that ensure compliance with the emission limits (for example, operating, recordkeeping and monitoring requirements).

53.     The GP PTIO 12.1 and GP PTIO 12.2 Permits, at Condition A. 13, state:

>    You can transfer this permit to a new owner or operator. If you transfer the permit, you must follow the procedures in OAC Chapter 3745-31, including notifying Ohio EPA or the local air agency of the change in ownership or operator. Any transferee of this permit must assume the responsibilities of the transferor permit holder.

54.     The GP PTIO 12.1 and GP PTIO 12.2 Permits, at Condition C. 4. c) (1), state:

>    The flare or combustion device shall be operated with a flame present at all times when gases are vented to it.

55.     The GP PTIO 12.1 and GP PTIO 12.2 Permits, at Condition C. 4. d) (1), state:

>    If the permittee is using the flare/combustion device to demonstrate compliance with 40 CFR 63.771(d) for the TEG dehydrator or to demonstrate compliance with 40 CFR 60.5412(d) for each storage vessel calculated to have VOC emission equal to or exceeding 6 tons per year, the permittee shall maintain the appropriate records to demonstrate that the enclosed flare/combustion device is designed and operated to reduce VOC, TOC, or total HAP by 95% by weight; or the concentration of TOC or Total HAP to 20 ppm by volume on a dry basis and corrected to 3% oxygen, all in accordance with the applicable rules; or shall maintain the records required to demonstrate that the open flare is designed and operated in accordance with 40 CFR 63.11(b) or 40 CFR 60.18(b), as applicable per federal rules.

56.     The GP 12.1 and GP PTIO 12.2 Permits, at Condition C. 4. d) (2), state:

>    The permittee shall: 1) continuously monitor the presence of the flame; 2) record all periods during which the automatic flare ignition system (pilot flame or electronic arc ignition system) or thermocouple was not working and gas was being

vented to the flare/combustion device; and 3) record all periods of time during which gas was being vented to the flare/combustion device and there was no flame.

57.     The GP PTIO 12.1 and GP PTIO 12.2 Permits, at Condition C. 6. b) (1) c., state:

The facility must calculate the potential for VOC emissions for each single storage vessel using an accepted model or calculation methodology, based on the maximum average daily throughput determined for a 30-day period of production prior to 10/15/13 for Group 1 storage vessels[], or determined for a 30-day period of production prior to 4/15/14 or 30 days after startup for Group 2 storage vessels[].

Where these potential VOC emissions are calculated to equal or exceed 6 TPY, the permittee must either maintain the uncontrolled actual VOC emissions at less than 4 TPY and maintain monthly emission calculations in accordance with 40 CFR 60.5395(d)(2); or install a control device, closed vent system, and covers designed and operated to reduce VOC emissions by 95.0%, and by 4/15/14 or 60 days after startup for Group 2 storage vessels or by 4/15/15 for Group 1 storage vessels. Conduct monthly inspections of collection and control equipment.

58.     The GP PTIO 12.1 and GP PTIO 12.2 Permits, at Condition C. 6. b) (2) e., state:

Unless meeting the requirements of 40 CFR 60.5395(d)(2), where the uncontrolled actual VOC emissions can be demonstrated to be less than 4 tons per year, or where it has been demonstrated that the potential VOC emissions are less than 6 TPY, the VOC emissions from each storage vessel affected facility shall be reduced by 95.0 percent by April 15, 2014, or within 60 days after startup, for Group 2 storage vessels; or by April 15, 2015 for Group 1 storage vessels.

59.     The GP PTIO 12.1 and GP PTIO 12.2 Permits, at Condition C. 6. b) (2) f., state:

Any vapors from storage vessels that are recovered and routed to a vapor recovery unit (VRU) system meeting the

cover and closed vent system requirements specified in 40 CFR 60.5411(b) and (c) are not required to be included in the determination of VOC potential to emit for purposes of determining affected facility status for NSPS Subpart OOOO. However, if the VRUs are removed or if the system fails to meet the cover and closed vent system requirements of Subpart OOOO, the potential VOC emissions from each such storage vessel shall be calculated within 30 days of the removal or non-compliant operations of the VRU system.

60.     The GP PTIO 12.1 and GP PTIO 12.2 Permits, at Condition C. 6. c) (2), state:

Each storage vessel subject to the control requirements of Part 60 Subpart OOOO shall be equipped with a cover that meets the requirements of 40 CFR 60.5411(b); and the storage vessel shall be connected through a closed vent system designed and operated with no detectable emissions, as determined using olfactory, visual and auditory inspections, and in accordance with 40 CFR 60.5411(c) to either: 1. an enclosed combustion control device, designed and operated in accordance with 40 CFR 60.5412(d) or 40 CFR 60.5413(d); 2. an open flare meeting the requirements identified in this permit; or 3. to a process. The collection and control systems shall be operated at all times when gases, vapors, and fumes are vented from the subject storage vessels to a control device; and where routing emissions to a process it must be operational 95% or more of the year.

61.     The GP 12.1 PTIO and GP PTIO 12.2 Permits, at Condition C. 6. d) (2), state:

Where using vapor recovery unit(s) (VRU) for compliance, the permittee shall maintain records that document the VRU system is operated in compliance with the cover and closed vent system requirements of 40 CFR 60.5411(b) and 40 CFR 60.5411(c).

62.     The GP PTIO 12.1 and GP PTIO 12.2 Permits, at Condition C. 6. d) (3), state:

Where required, the permittee shall conduct monthly inspections for each closed vent system, each cover, and the combustion control device used to demonstrate compliance

in accordance with 40 CFR 60.5416(c) and 40 CFR 60.5417(h); and shall maintain the records identified in 40 CFR 60.5420(c).

63. The GP PTIO 12.1 and GP PTIO 12.2 Permits, at Condition C. 6. e) (2), state:

The permittee shall submit an initial annual report within 90 days after the end of the initial compliance period for each storage vessel determined to have potential VOC emissions equal or greater than 6 tons per year. Subsequent annual reports are due no later than the same date each year following the initial report. The reports shall include the information identified in 40 CFR 60.5420(b).

64. The GP PTIO 12.1 and GP PTIO 12.2 Permits, at Condition C. 6. f) (1), state, in pertinent part:

<u>Applicable Compliance Method, through design of collection and controls:</u> Initial compliance with the Part 60, Subpart OOOO standards for storage vessel affected facilities shall be demonstrated by complying with the applicable portions of 40 CFR 60.5411(b) and (c), and 40 CFR 60.5412(d) or 40 CFR 60.5413(e) if the control device is tested by the manufacturer.

Continuous compliance with the Part 60, Subpart OOOO standards for storage vessel affected facilities shall be demonstrated by complying with the applicable portions of 40 CFR 60.5415(e), 40 CFR 60.5416(c), and 40 CFR 60.5417(d) or (h).

Group 1 storage vessels (installed between 8/24/11 and 4/12/13) must be in compliance by April 15, 2015; and Group 2 storage vessels (installed after 4/12/13) must be in compliance by 4/15/14 or within 60 days after startup. In the event an amendment to NSPS Subpart OOOO requires a performance test for the combustion control device to demonstrate compliance, the permittee shall schedule such performance test as required by the amended rules.

18

65.     Each of the Subject Facilities, except for Cole and Dynamite, operate under either the GP PTIO 12.1 and GP PTIO 12.2 Permits.

66.     The Cole Subject Facility operates under a PTIO that has been slightly modified from the GP PTIO ("Cole PTIO"), with additional requirements related to flare and emission unit operation at that facility.  The Cole PTIO includes site-specific conditions that require 98% or greater control of VOC emissions from storage vessels, a system to automatically shut in the wells when the vapor recovery unit and flare are down so as to prevent overpressurization and uncontrolled venting from the storage vessels, and pressure and/or liquid level monitoring of the storage vessels.

67.     The Dynamite Subject Facility operates under a PTIO that has been slightly modified from the GP PTIO ("Dynamite PTIO"), with additional requirements related to flare and emission unit operation at that facility.  The Dynamite PTIO includes direct references to required provisions of NSPS Subpart OOOOa and requires organic vapors released from the non-produced water storage tanks to be vented to and controlled at all times by either the vapor recovery compressor or by a combustor or flare.

## Clean Air Act Enforcement

68.     Section 113(a)(3) of the CAA, 42 U.S.C. § 7413(a)(3), authorizes EPA to bring a civil action if the Administrator of EPA finds that any person is in violation of any regulation promulgated under Section 111 of the CAA, 42 U.S.C. § 7411, including the regulations contained in Subparts OOOO and OOOOa.

69.     Section 113(a)(1) of the CAA, 42 U.S.C. § 7413(a)(1), authorizes EPA to bring a civil action if the Administrator of EPA finds that any person is in violation of any SIP requirements, including limitations and conditions contained in permits issued pursuant to a SIP,

19

such as the limitations and conditions contained in GP PTIO 12.1 and GP PTIO 12.2 that expressly incorporate relevant requirements of Subpart OOOO.

70.     The United States Department of Justice has authority to bring this action on behalf of the Administrator of EPA under 28 U.S.C. §§ 516 and 519 and Section 305(a) of the CAA, 42 U.S.C. § 7605(a).

71.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the Court to enjoin a violation of the CAA, to require compliance, to assess a civil penalty, and to award any other appropriate relief for each violation.

72.     Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes civil penalties of up to $25,000 per day for each violation of the CAA.

73.     The Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. 101–410, Oct. 5, 1990, 104 Stat. 890, as amended, 28 U.S.C. § 2461 note, requires EPA to periodically adjust civil penalties for inflation.  On February 13, 2004, December 11, 2008, January 12, 2017, January 10, 2018, February 6, 2019, February 25, 2019, January 17, 2020, November 15, 2021, and March 17, 2022 EPA adopted and revised regulations entitled "Adjustment of Civil Monetary Penalties for Inflation," 40 C.F.R. Part 19, to upwardly adjust the maximum civil penalty under CAA Section 113(b).  For each violation that occurs between January 13, 2009, and November 2, 2015, inclusive, penalties of up to $37,500 per day may be assessed.  For each violation that occurs after November 2, 2015, penalties of up to $109,024 per day may be assessed.  69 Fed. Reg. 7,121 (Feb. 13, 2004); 73 Fed. Reg. 75,340 (Dec. 11, 2008); 82 Fed. Reg. 3,633 (Jan. 12, 2017); 83 Fed. Reg. 1,190 (Jan. 10, 2018); 84 Fed. Reg. 2,056 (Feb. 6, 2019); 84 Fed. Reg. 5,955 (Feb. 25, 2019); 85 Fed. Red. 2,869 (Jan. 17, 2020); 86 Fed. Reg. 62,928 (Nov. 15, 2021); 87 Fed. Reg. 15,100 (Mar. 17, 2022).

### THE EPA INVESTIGATIONS OF CAA VIOLATIONS BY URO

74.    The Subject Facilities listed below are all oil and gas production well pads owned and/or operated by URO:

      a.  Cole
         Wills Township, Guernsey County
         GPS Coordinates: 40.04299, -81.3819

      b.  Commissioners-Onega
         Wills Township, Guernsey County
         GPS Coordinates: 39.9996, -81.4398

      c.  Detweiler
         Wills Township, Guernsey County
         GPS Coordinates: 39.98858, -81.3869

      d.  Dynamite
         Wills and Richland Townships, Guernsey County
         GPS Coordinates: 39.97802, -81.4208

      e.  Neff
         Wills Township, Guernsey County
         GPS Coordinates: 40.00497, -81.3912

      f.  Stiers
         Richland Township, Guernsey County
         GPS Coordinates: 39.95118, -81.4348

      g.  Palmer
         Center Township, Morgan County
         GPS Coordinates: 39.60806, -81.6686

      h.  Miley
         Seneca and Buffalo Townships, Noble County
         GPS Coordinates: 39.85269, -81.4574

      i.  Garvin
         Adams Township, Washington County
         GPS Coordinates: 39.56399, -81.5081

      j.  Mason
         Waterford Township, Washington County
         GPS Coordinates: 39.56775, -81.5891

      k.  Neill
         Waterford Township, Washington County
         GPS Coordinates: 39.53229, -81.6775

75.    URO's storage vessels at the Subject Facilities were all constructed after August 23, 2011, and are therefore subject to regulations under either Subpart OOOO or OOOOa, as applicable based on the date of construction.

76.    On April 18, 2019, EPA staff inspected and observed the Subject Facilities owned and operated by URO.

77.    In October 2019, EPA issued to URO a formal request for information under Section 114 of the CAA. 42 U.S.C. § 7414.

78.    On December 6, 2019, URO responded to the information request. URO's responses to the information request included, among other things, emissions evaluations of the storage vessels at the Subject Facilities.

79.    Each of URO's storage vessels at the Subject Facilities has the potential for VOC emissions equal to or greater than six tons per year for a 30-day period of production prior to the applicable emission determination deadline as specified in Subparts OOOO and OOOOa, as applicable.

80.    For each of the Subject Facilities, permit applications were submitted to Ohio EPA between November 2012 and January 2017. The permit applications contained statements that the facilities would comply with certain operating, monitoring, recordkeeping, reporting, and compliance testing or compliance demonstration requirements.

81.    The PTIOs issued to the Subject Facilities include no legally and practically enforceable limits to restrict the potential VOC emissions from each storage vessel to less than six tons per year.

82.     The storage vessels at URO's Subject Facilities are "storage vessel affected facilities" under Subparts OOOO or OOOOa, as applicable based on the storage vessels' date of construction.

83.     During the April 2019 inspections, EPA staff detected emissions from thief hatches or pressure relief devices on storage vessels at all the Subject Facilities.

84.     During the April 2019 inspections, EPA staff observed that the combustion control devices at the Subject Facilities were not operating with a continuous pilot flame while vapors were being directed to them.

85.     In response to EPA's October 2019 information request, for the Subject Facilities, URO provided less than 5 years of records documenting any time periods when a vapor recovery compressor ("VRC") or flare was not in service when the emissions unit(s) was/were in operation.

86.     In response to EPA's October 2019 information request, URO stated that "Utica does not currently monitor and record the pressure, flow rate, and/or throughput of storage vessel vapors routed to a combustor at any of the relevant facilities."

87.     On April 27, 2020, URO submitted a letter to Ohio EPA disclosing additional noncompliance with certain terms and conditions of the PTIOs issued for the Cole, Detweiler, Dynamite, Garvin, Mason, Miley, Neff, Neill, Palmer, Stiers, and Commissioners-Onega Subject Facilities. This disclosure included noncompliance related to certain permit recordkeeping, reporting, monitoring, operational, and other requirements. A true and correct copy of URO's self-disclosure letter is attached to this Complaint as Attachment 1.

## CLAIMS FOR RELIEF

### Claim 1

**Failure to Comply with Storage Vessel Cover Requirements**

88.     Paragraphs 1 through 87 are incorporated herein by reference.

89.     URO is required to comply with the cover requirements of 60 C.F.R. § 60.5411(b) or § 60.5411a(b) and GP 12.1 and 12.2 Permit Conditions C. 6. b) (1) c. and C. 6. c) (2), as applicable, at the Subject Facilities.

90.     From at least 2018 to the present, at the Cole, Commissioners-Onega, Detweiler, Dynamite, Garvin, Mason, Miley, Neill, Palmer, and Stiers Subject Facilities, URO has failed to ensure that the covers on the storage vessels meet these requirements, including that the covers and all openings shall form a continuous impermeable barrier over the entire surface area of the liquid in the vessel, and that each cover opening shall be secured in a closed, sealed position except when certain activities are ongoing, violating 40 C.F.R. § 60.5411(b) or § 60.5411a(b), as applicable determined by construction date; and GP 12.1 and 12.2 Permit Conditions C. 6. b) (1) c. and C. 6. c) (2), as applicable.

91.     URO's violations of the CAA, as set forth in this claim, make URO subject to injunctive relief and civil penalties of up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 73, per day per violation, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b).

### Claim 2

**Failure to Design and Operate Closed Vent Systems with no Detectable Emissions**

92.     Paragraphs 1 through 87 are incorporated herein by reference.

93.     URO is required to comply with the closed vent system requirements of 40 C.F.R. § 60.5411(c) or § 60.5411a(c), as applicable determined by construction date; and GP 12.1 and 12.2 Permit Conditions C. 6. b) (1) c. and C. 6. c) (2) as applicable, at the Subject Facilities.

94.     From at least 2018 to the present, at the Cole, Commissioners-Onega, Detweiler, Dynamite, Garvin, Mason, Miley, Neill, Palmer, and Stiers Subject Facilities, URO has failed to design the closed vent systems to route all gases, vapors, and fumes emitted from the material in the storage vessels to a control device, and to design and operate closed vent systems with no detectable emissions, as determined using olfactory, visual, and auditory inspections, violating 40 C.F.R. § 60.5411(c) or § 60.5411a(c), as applicable determined by construction date; and GP 12.1 and 12.2 Permit Conditions C. 6. b) (1) c. and C. 6. c) (2) as applicable.

95.     URO's violations of the CAA, as set forth in this claim, make URO subject to injunctive relief and civil penalties of up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 73, per day per violation, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b).

## Claim 3

### Failure to Demonstrate Initial Compliance

96.     Paragraphs 1 through 87 are incorporated herein by reference.

97.     URO is required to demonstrate initial compliance with Subpart OOOO for each storage vessel by completing compliance requirements found elsewhere in Subpart OOOO: determining the potential VOC emission rate (40 C.F.R. § 60.5365(e)); reducing VOC emissions (40 C.F.R. § 60.5395(d)); meeting certain cover, closed vent, and control device requirements, as applicable (40 C.F.R. § 60.5395(e), 40 C.F.R. § 60.5411(b) and (c)); meeting reporting requirements, including an initial annual report due no later than 90 days after the initial

compliance period (40 C.F.R. § 60.5420(b)); and maintaining appropriate records (40 C.F.R. § 60.5420(c)).

98. URO is required to demonstrate initial compliance with Subpart OOOOa for each storage vessel by completing compliance requirements found elsewhere in Subpart OOOOa: determining the potential VOC emission rate (40 C.F.R. § 60.5365a(e)); reducing VOC emissions (40 C.F.R. § 60.5395a(a)); meeting certain cover, closed vent and control device requirements, as applicable (40 C.F.R. § 60.5411a(b)-(d)); conducting initial performance tests as required (40 C.F.R. § 60.5413a) and complying with continuous compliance requirements (40 C.F.R. § 60.5415a(e)); meeting reporting requirements, including an initial annual report due no later than 90 days after the initial compliance period (40 C.F.R. § 60.5420a(b)); and maintaining appropriate records (40 C.F.R. § 60.5420a(c)).

99. From at least 2018 to the present, at the Cole, Commissioners-Onega, Detweiler, Dynamite, Garvin, Mason, Miley, Neill, Palmer, and Stiers Subject Facilities, URO has failed to meet certain cover, closed vent, and control device requirements and has failed to keep certain required records of control device operation; therefore, URO has failed to demonstrate initial compliance at these Subject Facilities in violation of 40 C.F.R. § 60.5410(h) or § 60.5410a(h), as applicable determined by construction date; and GP 12.1 and 12.2 Permits, at Condition C. 6. f) (1), as applicable.

100. From at least 2018 to the present, at the Neff Subject Facility, URO has failed to keep certain required records of control device operation and has therefore failed to demonstrate initial compliance at Neff in violation of 40 C.F.R. § 60.5410a(h).

101. URO's violations of the CAA, as set forth in this claim, make URO subject to injunctive relief and civil penalties of up to the inflation-adjusted statutory maximum amounts

referenced in Paragraph 73, per day per violation, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b).

## Claim 4

### Failure to Operate in a Manner Consistent with Good Air Pollution Control Practices

102.    Paragraphs 1 through 87 are incorporated herein by reference.

103.    Subparts OOOO and OOOOa require that at all times, including periods of startup, shutdown, and malfunction, URO shall maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practices for minimizing emissions. 40 C.F.R. § 60.5370(b) and 40 C.F.R. § 60.5370a(b).

104.    Based on the April 2019 inspections and URO's self-disclosure letter, URO has failed to adequately operate control devices at the Subject Facilities, including but not limited to failure to operate with a continuous pilot flame, failure to implement a site-specific leak detection program, failure to conduct certain inspections, and failure to keep records. During the April 2019 inspection, EPA staff observed detectable emissions from storage vessels at the Subject Facilities.

105.    Based on the foregoing, from at least 2018 to the present, URO failed to operate the Subject Facilities in a manner consistent with good air pollution control practices for minimizing emissions, in violation of 40 C.F.R. § 60.5370(b) or § 60.5370a(b), as applicable.

106.    URO's violations of the CAA, as set forth in this claim, make URO subject to injunctive relief and civil penalties of up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 73, per day per violation, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b).

## Claim 5

### Failure to Comply with Combustor Operation Requirements

107.    Paragraphs 1 through 87 are incorporated herein by reference.

108.    URO is required to comply with the combustor operation requirements of Subpart OOOO, at 40 C.F.R. § 60.5412(d)(1)(ii); Subpart OOOOa, at 40 C.F.R. § 60.5413a(e)(2); GP PTIO 12.1 and GP PTIO 12.2 Permits, at Condition C. 4. c) (1); and Permit condition C. 2. b) (1), C. 2. c) (2) and C. 2. c) (3) a. of the Cole PTIO, as applicable.

109.    From at least 2018 to the present, at the Cole, Garvin, Neill, and Stiers Subject Facilities, URO failed to operate its combustors with a continuously burning pilot flame while gas was being routed to the combustor, in violation of Subpart OOOO, at 40 C.F.R. § 60.5412(d)(1)(ii); Subpart OOOOa, at 40 C.F.R. § 60.5413a(e)(2); GP PTIO 12.1 and GP PTIO 12.2 Permits, at Condition C. 4. c) (1); and Permit condition C. 2. b) (1), C. 2. c) (2) and C. 2. c) (3) a. of the Cole PTIO, as applicable.

110.    URO's violations of the CAA, as set forth in this claim, make URO subject to injunctive relief and civil penalties of up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 73, per day per violation, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b).

## Claim 6

### Recordkeeping Violations

111.    Paragraphs 1 through 87 are incorporated herein by reference.

112.    URO is required to comply with the recordkeeping requirements of GP PTIO 12.1 and GP PTIO 12.2 Permits, at Condition C. 4. d) (1); Permit condition C. 3. d) (6) of the Cole PTIO; and Permit condition C. 3. d) (8) of the Dynamite PTIO.

113.    From at least 2018 to the present, at the Subject Facilities, URO failed to maintain, for a period of not less than five years, records that document any time periods when the VRC or flare was not in service when the emissions unit(s) was/were in operation, in violation of GP PTIO 12.1 and GP PTIO 12.2 Permits, at Condition C. 4. d) (1); Permit condition C. 3. d) (6) of the Cole PTIO; and Permit condition C. 3. d) (8) of the Dynamite PTIO.

114.    URO's violations of the CAA, as set forth in this claim, make URO subject to injunctive relief and civil penalties of up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 73, per day per violation, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b).

## Claim 7

### Failure to Comply with Emissions Units Installation and Operation Requirements

115.    Paragraphs 1 through 87 are incorporated herein by reference.

116.    PTIO Permit condition A. 1. requires URO to install and operate the emissions units identified in its PTIOs in accordance with the application submitted and all the terms and conditions of the applicable PTIOs.

117.    From at least 2018 to the present, based on URO's responses to the information request and observations made by EPA staff, at the Subject Facilities, URO failed to install and operate the units in accordance with the applications submitted and all the terms and conditions contained in the PTIOs, in violation of Permit Condition A. 1. of the PTIOs, including but not limited to failure to operate with a continuous pilot flame, failure to keep records of gas being routed to control devices, and failure to conduct certain inspections of emissions units.

118.    URO's violations of the CAA, as set forth in this claim, make URO subject to injunctive relief and civil penalties of up to the inflation-adjusted statutory maximum amounts

referenced in Paragraph 73, per day per violation,  pursuant to CAA Section 113(b), 42 U.S.C.
§ 7413(b).

## Claim 8

### Tank Pressure Monitoring Violations

119.    Paragraphs 1 through 87 are incorporated herein by reference.

120.    Permit condition  C. 3. c) (4) of the Cole PTIO requires URO to install  and operate
a system to automatically  close the shutdown valves for the wells when the VRC and flares are
both not operating,  in order to prevent the tank(s) from uncontrolled  venting,  and to continuously
monitor  the tank pressure, the liquid  level,  or both.

121.    From at least 2018 to the present, at the Cole Subject Facility,  URO failed to
properly  install  and operate a system to continuously  monitor  the tank pressure, the liquid  level,
or both, and to automatically  close the shutdown valves to prevent uncontrolled  venting,  in
violation  of Permit condition  C. 3. c) (4) of the Cole PTIO.

122.    URO's violations  of the CAA, as set forth in this claim,  make URO subject to
injunctive  relief and civil penalties of up to the inflation-adjusted  statutory maximum  amounts
referenced in Paragraph 73, per day per violation,  pursuant to CAA Section 113(b), 42 U.S.C.
§ 7413(b).

## Claim 9

### Additional Violations of PTIO Conditions

123.    Paragraphs 1 through 87 are incorporated herein by reference.

124.    The Subject Facilities'  PTIOs include  a number of requirements relating  to
operation and maintenance of equipment, monitoring,  recordkeeping, and reporting.

125.    From at least 2018 to the present, URO failed to comply  with numerous operation
and maintenance, monitoring,  recordkeeping,  and reporting requirements applicable  to the

Subject Facilities' PTIOs, as detailed in its noncompliance disclosure letter, attached as Attachment 1.

126.     URO's violations of the CAA, as set forth in this claim, make URO subject to injunctive relief and civil penalties of up to the inflation-adjusted statutory maximum amounts referenced in Paragraph 73, per day per violation, pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b).

## PRAYER FOR RELIEF

Wherefore, the United States requests that this Court:

i.   Enjoin URO from further violations of the CAA and order URO to take all steps necessary to achieve compliance with the CAA;

ii.   Assess civil penalties against URO of up to $109,024 per day for each violation after November 2, 2015;

iii.   Award the United States its costs in this action;

iv.   Award any other appropriate relief in accordance with CAA Section 113(b), 42 U.S.C. § 7413(b); and

v.   Grant such other relief as the Court deems just and proper.

Signature Page for Complaint in *United States v. Utica Resource Operating, LLC* (S.D. Ohio)

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

s/ Nicholas A. McDaniel
NICHOLAS A. MCDANIEL
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
(202) 514-0096
Nicholas.a.mcdaniel@usdoj.gov

KENNETH L. PARKER
United States Attorney
Southern District of Ohio

ANDREW M. MALEK (0061442)
Civil Chief
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215